**ALASKA AIRLINES, Inc., et al.,**
Appellants,
v.
**CIVIL AERONAUTICS BOARD et al.,**
Appellees.

**AMERICAN AIRLINES, Inc., Appellant,**
v.
**CIVIL AERONAUTICS BOARD et al.,**
Appellees.
**Nos. 14192, 14193.**

United States Court of Appeals
District of Columbia Circuit.
Argued April 28, 1958.
Decided June 20, 1958.

Mr. John E. Stephen, Washington, D. C., with whom Mr. George S. Lapham, Jr., Washington, D. C., was on the brief, for appellants in No. 14192.

Mr. Daniel M. Gribbon, Washington, D. C., for appellant in No. 14193.

Mr. Robert L. Toomey, Attorney, Civil Aeronautics Board, with whom Messrs. Franklin M. Stone, General Counsel, Civil Aeronautics Board, John H. Wanner, Associate General Counsel, Civil Aeronautics Board, O. D. Ozment, Asst. General Counsel, Litigation and Research, Civil Aeronautics Board and Charles H. Weston, Chief, Appellate Section of the Antitrust Division, Department of Justice, were on the brief, for appellees. Mr. Morris Chertkov, Attorney, Civil Aeronautics Board, also entered an appearance for appellees.

Before EDGERTON, Chief Judge, and BAZELON and FAHY, Circuit Judges.

EDGERTON, Chief Judge.

The Civil Aeronautics Board's revised "Uniform System of Accounts and Reports for Air Carriers" determines the kinds of equipment for which depreciation may be taken, requires reserves for major overhauls of airframes, and requires cost of overhauls to be included in the value of aircraft. 21 Fed.Reg. 4435. Appellant air carriers filed in the District Court a complaint challenging these regulations on the ground that the

Board has no authority to regulate depreciation charges, except by adjusting or disallowing them in rate-making.

Section 407(d) of the Civil Aeronautics Act, 52 Stat. 1000, 49 U.S.C.A. § 487(d), requires the Board to "prescribe the forms of any and all accounts, records, and memoranda to be kept by air carriers, including the accounts, records, and memoranda of the movement of traffic, as well as of the receipts and expenditures of money, and the length of time such accounts, records, and memoranda shall be preserved; and it shall be unlawful for air carriers to keep any accounts, records, or memoranda other than those prescribed or approved" by the Board.

■ The District Court rendered summary judgment for the Board. The court cited Kansas City Southern Ry. Co. v. United States, 1913, 231 U.S. 423, 34 S.Ct. 125, 58 L.Ed. 296, which held that similar statutory authority over the form of accounts and records carried with it some control over their substance. We think it does not follow from that decision, rendered over 44 years ago, that the Civil Aeronautics Board now has the authority it claims. The question is what intention should now be attributed to Congress. Congress has *expressly* authorized one regulatory agency after another to control depreciation practices. It has done so in the Federal Power Act,[1] the Natural Gas Act,[2] and the Interstate Commerce Act, Part II, dealing with motor carriers. The 1940 amendment of the Motor Carrier Act provides: "The Commission may prescribe for motor carriers the classes of property for which depreciation charges may properly be included under operating expenses, and the rate or rates of depreciation which shall be charged with respect to each of such classes of property * * *."[3] In the Interstate Commerce Act, Parts I and III, dealing with railroads and water carriers,[4] and the Federal Communications Act,[5] Congress expressly *required* the agency to prescribe depreciation practices. We conclude that when Congress wishes to confer such authority, it says so.

■ The legislative history of the Civil Aeronautics Act tends to confirm the view that Congress has not conferred this authority on the Board. When the Senate was considering Senate Bill No. 3845 and also a substitute offered by Senator Truman, he said: "The bill [S.R. 3845] contains a section (sec. 408(b), p. 64, line 6) which expressly empowers the authority to prescribe rates of depreciation for the property of air carriers. The substitute contains no express provision on this subject, but the authority in fixing the rates for a particular air carrier could inquire into the rates of depreciation charged off by the carrier, and if it found them too high, could disallow the expense. The substitute certainly is preferable in this case because the imposition of this requirement upon the authority will only increase the administrative burden of the authority and will not increase the effectiveness of its regulation. While it is possible to forecast the rate at which a railroad car will depreciate, it it utterly impossible to do so in the case of aircraft, for aircraft are developing so rapidly that they are obsolete and cannot be used in competition long before they are worn out." 83 Cong.Rec. 6727–6728. The bill as it passed the Senate contained express authority over rates of depreciation, but the House bill (H.R. 9738) and the law as finally enacted did not mention depreciation. Moreover,

1. 49 Stat. 855, 16 U.S.C.A. § 825a(a).

2. 52 Stat. 826, 15 U.S.C.A. § 717h(a).

3. 54 Stat. 927, 49 U.S.C.A. § 320(c). The original 1935 Act covering motor carriers, 49 Stat. 563, contained a general books-and-records clause but no specific depreciation authority.

4. 41 Stat. 493, 54 Stat. 917, 49 U.S.C.A. § 20(4); 54 Stat. 945, 49 U.S.C.A. § 913(d).

5. "The Commission shall, as soon as practicable, prescribe for such carriers the classes of property for which depreciation charges may be properly included under operating expenses * * *." 48 Stat. 1078, 47 U.S.C.A. § 220(b).

only two days before it passed the Civil Aeronautics Act, Congress included in the Natural Gas Act not only a section dealing with accounts but also a section authorizing the Power Commission to regulate depreciation charges.

The Board contends it has long exercised control over depreciation practices. It cites a regulation adopted in 1938, 3 Fed.Reg. 2474, requiring air carriers to keep their accounts in accordance with systems prescribed by the Post Office Department which the Board says require these carriers to classify property as "subject to depreciation" or "not subject to depreciation". But in recommending to Congress, in 1955, that the Civil Aeronautics Act be amended to give the Board control over depreciation, the Comptroller General said: " * * * the Board has not prescribed any overall depreciation policies, rates of depreciation or residual values for air carriers' flight equipment or other property primarily because it is of the view that authority to do so is not specifically contained in the Civil Aeronautics Act." [6]

 Whether the Board should have the control over depreciation that Congress has given to other agencies is a problem for Congress, not the courts. See Border Pipe Line Co. v. Federal Power Commission, 84 U.S.App.D.C. 142, 171 F.2d 149.

Reversed.

6. Hearings of Subcommittee of the Senate Committee on Interstate and Foreign Commerce on Amendments to the Civil Aeronautics Act, 84th Cong., 1st Sess., pp. 179–180 (1955).